UNITED STATES, Appellee

v

CHARLES O. FROST, Lance Corporal, U. S. Marine Corps, Appellant

22 USCMA 233, 46 CMR 233

*Lieutenant Michael W. Boehm,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Thomas M. Geisler, Jr.,* JAGC, USNR.

*Captain Joseph W. Diver,* USMCR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel G. L. Bailey,* USMC.

## Opinion of the Court

DUNCAN, Judge:

Appellant was convicted on January 14, 1972, contrary to his plea, of attempted larceny of a United States Treasury check of a value of $6,400.00, in violation of Article 80, Uniform Code of Military Justice, 10 USC § 880. The court-martial, with members sitting, sentenced the appellant to be confined at hard labor for 12 months, to forfeit all pay and allowances, and reduction to pay grade E-1. The convening authority approved the findings and so much of the sentence as provides for confinement at hard labor for 6 months, forfeiture of $192.00 per month for 6 months, and reduction to pay grade E-1. The Judge Advocate General of the Navy forwarded the record of trial to the Court of Military Review pursuant to Article 69, UCMJ, 10 USC § 869, and their attention was invited to the following issues:

I. Whether the evidence is sufficient to support a finding of guilty of attempted larceny of a treasury check of a value in the amount alleged.

II. Whether the military judge's instructions with respect to the value of the check were correct.

The Court of Military Review affirmed the findings and sentence.

A certificate of review of the Judge Advocate General of the Navy, filed under the provisions of Article 67 (b)(2), UCMJ, 10 USC § 867, asks that we determine the correctness of the decision of the Court of Military Review.

The evidence adduced at trial presents a clear picture of the events that transpired on the afternoon of September 1, 1971. Appellant was employed in the Fiscal Section, Disbursing Office, MCAS, Cherry Point, North Carolina. He typed checks as part of his duties, and during the course of his work he took a blank United States Treasury check with which he was working, typed in his name as payee and entered the figure "$6,400.00" as the value of the check. He then inserted the check into a check protector machine, where that amount was perforated in the check. At 1:00 p.m. the Assistant Disbursing Officer was informed a check was missing by Staff Sergeant Wilson. Appellant had reported the missing check to Wilson, after he became frightened upon realizing that the imprint of the check he typed would appear on the carbon ribbon of the typewriter used to write checks. The office was searched with negative results. Later it was determined from an inspection of the carbon ribbon on the typewriter that a check had been written to "C. O. FROST" with a dollar value of $6,400.00. Appellant was taken to the Naval Investigative Service office. The check was later located taped underneath a desk used by appellant, after

Frost advised the criminal investigator of its location.

The appellant's voluntary pretrial statement (Prosecution Exhibit 1) concerning the incident was admitted into evidence at trial. In it, he stated that while typing the check he had an intent to steal the check and cash it. However, when he was about to complete typing the amount he realized it was not negotiable until signed by the Disbursing Officer. Nevertheless, he put the check into the check machine for perforation of the $6,400.00 amount. In testifying, Frost essentially admitted the circumstances as recited in his pretrial statement, and again admitted under oath to having

> some intent of stealing the check, but as I typed the last number and finished typing the check, I realized I was wrong and that the check was not negotiable and that I couldn't make it negotiable.

Finally, with regard to the check's negotiability, the Disbursing Officer testified in substance that appellant did not and would not have had access to the check signature machine and, in his experience, a check with the name of the payee and the dollar amount typed in but with no signature on it would not be a negotiable instrument.

I

We see the critical question at issue to be whether a lack of the maker's signature on the treasury check made out in the amount of $6,400.00 endowed the check with value in that amount or only of a nominal value.

We have no contention with the Court of Military Review's enunciation of the law relating to conviction of an attempt to commit another crime. Article 80, UCMJ. In essence, the Court of Military Review pointed out that paragraph 159, Manual for

Courts-Martial, United States, 1969 (Revised edition), which is an elaboration on Article 80, states:

> An accused may be guilty of an attempt even though the commission of the intended offense was impossible because of unexpected intervening circumstances or even though the consummation of the intended offense was prevented by a mistake on the part of the accused.

See also United States v Thomas, 13 USCMA 278, 32 CMR 278 (1962).

■ However, the Court of Military Review viewed the lack of signature as determinative that appellant could not consummate a larceny of a check worth $6,400.00, but could be convicted of attempted larceny of a check worth $6,400.00. We do not believe, as the majority of the Court of Military Review does, that on the facts presented "it was factually impossible for appellant to have completed the offense of larceny."[1]

■ The offense of larceny is delineated in Article 121, UCMJ, 10 USC § 921, in part, as follows:

> (a) Any person subject to this chapter who wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of *value of any kind*—

> (1) with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner . . . . (Emphasis added.)

Thus, Article 121 requires as an element of larceny, merely that the object of larceny be of some value. The specific value alleged in a given case is not an element of larceny, but

---

[1] The evidence indicates that a charge of larceny of a writing having nominal value could have been sustained. However, this need not be considered further for paragraph 159, Manual, supra, points out:

> An accused may be convicted of an attempt to commit an offense although it appears on the trial that the offense was consummated.

See also United States v Thomas, supra.

rather a matter in aggravation which controls the maximum permissible punishment. See Table of Maximum Punishments, paragraph 127, Manual, supra.

As we stated in United States v Windham, 15 USCMA 523, 525, 36 CMR 21, 23 (1965):

> [I]n accordance with the power to prescribe maximum limits of punishment, conferred by Article 56 of the Uniform Code, supra, 10 USC § 856, the President has, in the main, keyed the maximum penalty to the value of the property taken by the accused. As we indicated earlier, value, for punishment purposes, is not the pecuniary advantage to the thief, but the value of the property as "determined by its legitimate market value at the time and place of the theft." Manual for Courts-Martial, United States, 1951, paragraph 200a(7), page 361.

Appellate defense and Government counsel primarily rely on their respective interpretations of the presumption in paragraph 200a(7), 1969 Manual (Revised edition), that relates:

> Writings representing value may be considered to have the value which they represented—even though contingently—at the time of the theft.

We feel this presumption has been well described by this Court in United States v Windham, supra at 525, 36 CMR 23, where we expressed:

> To establish that value, *various factors may be considered. In the absence of contrary evidence,* everyday experience in modern society suggests that the value of a check placed in circulation is its face value. (Emphasis added.)

■ The principle relied upon by the Government is that the check represents the *legitimate* market value of $6,400.00, in absence of evidence to the contrary. However, the Government's case demonstrates evidence to the contrary. The check lacked the critical signature of the maker and without which it cannot even be characterized as a negotiable instrument.[2] The first requirement of a negotiable instrument as defined by the Uniform Commercial Code § 3–104(1), is as follows:

> [A]ny writing to be a negotiable instrument within this Article must . . . be signed by the maker or drawer.

The value in the absence of other evidence was the value of it as a piece of paper or in other words nominal.

■ Further, the presumption that "[w]ritings representing value may be considered to have the value which they represented—*even though contingently*—at the time of the theft," (emphasis added) paragraph 200a(7), Manual, supra, does not support a contrary result. It would seem reasonable that this emphasized language was intended to abrogate the common law rule that negotiable instruments and other species of commercial writings were never worth the face values they represented, even though properly prepared and even though they would be considered as having those values in the halls of commerce.[3]

Furthermore, we believe that a reasonable interpretation of contingency language of paragraph 200a(7) refers to commercial writings, including negotiable instruments,[4] which are completed on their face and not to writings which are patently incomplete. Moreover, the same language of the Manual could encompass "conditions" or "con-

---

[2] This analysis does not purport to extend to a situation where the maker's signature has been forged. In addition, the instant case is in marked contrast to cases where the stolen checks on their face were complete and negotiable instruments, where we held it is proper to allege the value as the face value of the check. See United States v Buchhorn, 15 USCMA 556, 36 CMR 54 (1965); United States v Windham, supra.

[3] See 2 Wharton, Criminal Law and Procedure, § 491, at 158 (1957).

[4] See 2 Wharton, supra at 159–160, for various species of commercial writings including negotiable instruments.

tingencies" expressly provided for in a properly drawn commercial writing so as not to exclude such instruments from being the object of larceny of the apparent face value. The language of contingency does not refer to a patently ineffective instrument and make such a writing valued at an amount upon its face upon the speculation that at some time in the future it might be completed.

Therefore, we are of the opinion and so decide that the evidence to support a finding of guilty of attempted larceny of a treasury check of a value in the amount alleged, $6,400.00, was insufficient.

## II

■ Based on the foregoing reasoning the Court of Military Review was incorrect in determining that the military judge properly instructed the court with respect to the value of the check, as set out here below:

[T]hat the property *would become,* as a result of the activity of the accused with respect to that check, of a *value of $6,400.00,* or of some lesser value, in which case your finding must be in the lesser amount. (Emphasis added.)

Accordingly, we answer both certified questions in the negative and reverse the Court of Military Review. The record of trial is returned to the Judge Advocate General of the Navy for resubmission to the Court of Military Review for further action not inconsistent with this opinion and for reassessment of sentence.

Chief Judge DARDEN concurs.

Judge QUINN concurs in the result.